1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD A.M. MACHIEN,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 2:15-cv-01152-RBL

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff Machien has brought this matter for judicial review of defendant's denial of his

application for disability insurance and supplemental security income ("SSI") benefits. For the

reasons set forth below, defendant's decision to deny benefits is reversed and this matter is

remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance and SSI benefits on June 14, 2011,

alleging he became disabled beginning June 23, 2010. *See* Dkt. 15, Administrative Record

("AR") 165-76. Those applications were denied upon initial administrative review on August 26,

2011, and on reconsideration on October 10, 2011. *See* AR 108. A hearing was held before an

administrative law judge ("ALJ") on October 28, 2013, at which plaintiff, represented by

counsel, appeared and testified, as did a vocational expert. *See* AR 34-60.

In a decision dated November 22, 2013, the ALJ determined plaintiff to be not disabled.

*See* AR 15-29. Plaintiff's request for review of the ALJ's decision was denied by the Appeals

ORDER - 1

Council on May 22, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 6-9; 20 C.F.R. §§ 404.981, 416.1481. On July 23, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 5. The administrative record was filed with the Court on November 12, 2015. *See* Dkt. 15. The parties have completed their briefing, and thus this matter is ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or alternatively for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's residual functional capacity ("RFC"); and (3) in finding him to be capable of performing past work or other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical evidence in the record, and thus in assessing plaintiff's RFC and finding him capable of performing past work or other work, and therefore in determining plaintiff to be not disabled. Also for the reasons set forth below, however, the undersigned finds that while defendant's decision to deny benefits is reversed on this basis, this matter is remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal

ORDER - 2

standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639,

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

Plaintiff asserts that the ALJ erred by giving no weight to the opinion of evaluating psychologist Wayne Dees, Ph.D. *See* Dkt. 19, pp. 9-11. The Court agrees.

On April 3, 2012, Dr. Dees performed a psychological evaluation of plaintiff, diagnosing him with schizoaffective disorder, adult onset. *See* AR 344-47. Dr. Dees opined that plaintiff would have difficulty completing complex tasks, consistently showing up for work on time, reading social cues, and interacting with others. *See* AR 346. The ALJ gave this opinion no

ORDER - 4

weight because the ALJ found plaintiff's presentation of symptoms at the evaluation not to be credible, noting inconsistencies in plaintiff's alleged symptoms at other evaluations. *See* AR 26-27. This reason is not legitimate or supported by substantial evidence.

According to the Ninth Circuit, an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan*, 169 F.3d at 602). This situation is distinguishable from one in which the doctor provides his own observations in support of his assessments and opinions. *See Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Therefore, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

Here, Dr. Dees listed many of plaintiff's self-reports in the clinical interview section of his evaluation report. *See* AR 344-45. However, "[a] patient's report of complaints, or history, is an essential diagnostic tool," and "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints." *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) (citation omitted). Dr. Dees recorded these subjective complaints, but he also performed an objective Mental Status Examination ("MSE"). *See* AR 346-47.

The MSE is conducted by medical professionals skilled and experienced in psychology and mental health. "[E]xperienced clinicians attend to detail and subtlety in behavior, such as the

ORDER - 5

affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion, and communication of these observations." Paula T. Trzepacz & Robert W. Baker, *The Psychiatric Mental Status Examination* 3 (1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id*. at 4 (emphasis in original). A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect, and personality" (*id*.), and in part because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

Dr. Dees performed an MSE and charted results that included impairments in concentration and abstract thinking. *See* AR 347. Dr. Dees also observed poor hygiene and grooming, poor eye contact, irritability, difficulty interacting during testing, mild depression, tangential speech, and disorganized thoughts. *See id*. Notably, Dr. Dees observed inconsistency in plaintiff's reporting of his mental health issues but opined that there was no clear indication of malingering or factitious behaviors. *See id*. The evaluating mental health professional was in a better position than the ALJ to determine the credibility of plaintiff's alleged psychotic symptoms. For the ALJ to dismiss the opinion based solely on alleged malingering that Dr. Dees specifically did not find was an improper substitution of the ALJ's lay opinion. *See Gonzalez Perez v. Sec'y of Health and Human Services*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); *McBrayer v. Sec'y of Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983) (ALJ cannot arbitrarily substitute own

ORDER - 6

judgment for competent medical opinion).

The record shows that the medical opinion of Dr. Dees was ultimately informed by these professional observations, a clinical interview, objective examination, and plaintiff's subjective reports. The record does not show that Dr. Dees was improperly reliant on plaintiff's self-reports alone. Therefore, the ALJ erred by providing no specific and legitimate reason supported by substantial evidence for discounting Dr. Dees' opinion.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111) (codification of the harmless error rule)).

Had the ALJ fully credited the opinion of Dr. Dees, the RFC could have included additional limitations, as could the hypothetical questions posed to the vocational expert. As the ALJ's ultimate determination regarding disability was based on the testimony of a vocational expert on the basis of an improper hypothetical question, this error affected the ultimate disability determination and is not harmless.

ORDER - 7

II.    <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found that plaintiff had the RFC to perform work with:

**no exertional restrictions. He has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: he can understand, remember, and carry out simple instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work; he can make judgments on simple work-related decisions and can respond appropriately to supervision, coworkers, and deal with occasional changes in a work environment that requires only occasional exposure to or interaction with the general public.**

ORDER - 8

AR 22 (emphasis in original). However, because as discussed above the ALJ erred in evaluating the opinion of Dr. Dees, the ALJ's RFC assessment does not necessarily completely and accurately describe all of plaintiff's capabilities. Accordingly, here too the ALJ erred.

III.     The ALJ's Step Four and Step Five Determinations

The claimant has the burden at step four of the disability evaluation process to show that he or she is unable to return to his or her past relevant work. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *See id.*; 20 C.F.R. §§ 404.1520(d), (e), 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

Here, based on the testimony of a vocational expert, the ALJ found plaintiff capable of performing past relevant work or other work available in the national economy. *See* AR 27-29. Again, however, because the ALJ erred in evaluating the opinion of Dr. Dees and thus in assessing plaintiff's RFC, the hypothetical question presented at the hearing did not necessarily completely and accurately describe all of plaintiff's capabilities. Therefore, the ALJ's step-four and step-five determinations are not supported by substantial evidence and are in error.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record

ORDER - 9

that the claimant is unable to perform gainful employment in the national economy," that

"remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v.*

*Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Here, issues still remain regarding conflicts in the medical evidence, plaintiff's functional

capabilities, and his ability to perform past relevant work or other jobs existing in significant

numbers in the national economy despite additional limitations. Accordingly, remand for further

consideration is warranted in this matter.

<u>CONCLUSION</u>

The ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's

decision to deny benefits is REVERSED and this matter is REMANDED for further

administrative proceedings in accordance with the findings contained herein.

DATED this 6th day of April, 2016.

Ronald B. Leighton
United States District Judge

ORDER - 10